STATE OF MISSISSIPPI v. EDMUND MITCHELL.

[48 South. 963.]

1. CRIMINAL LAW AND PROCEDURE. *Indictment. Demurrer. Motion to quash. Code 1906, §§ 1426, 1427. Plea in bar.*

Under Code 1906, §§ 1426, 1427, so providing, defects apparent on the face of an indictment can be complained of only by demurrer, and defects *dehors* the indictment only by a motion to quash; hence, a judgment quashing an indictment is not warranted upon overruling a demurrer to a special plea.

2. SAME. *Special plea. Demurrer. Admissions by.*

A demurrer to a special plea to an indictment only admits the facts pleaded for the purpose of testing the legal question presented, and the state should be permitted to reply in case the demurrer is overruled.

3. SAME. *Same. Facts provable under not guilty.*

A special plea to an indictment setting up facts provable under the general issue, is a novelty in criminal procedure and is demurrable.

FROM the circuit court of Jackson county.

HON. WILLIAM H. HARDY, Judge.

Mitchell, appellee, was, jointly with several others, indicted for knowingly receiving deposits in an insolvent bank. A severance having been granted, appellee pleaded specially and the state demurred the plea. From a judgment overruling the demurrer and quashing the indictment, the state appealed to the supreme court.

The indictment was based upon Code 1906, § 1169, and charged that Mitchell and others, officers and directors and managers of the Ocean Springs branch of the Scranton State Bank,

received a deposit of money, ninety-five dollars, from Mrs. Aline Phelps, a depositor, while the said officers and directors and managers knew that the bank was insolvent, and without informing· Mrs. Phelps of the insolvent condition of the bank. The appellee filed a special plea to the indictment, averred that he was a director of the bank in question at the time of the alleged deposit and had no other connection with the bank save such as existed by virtue of law because of his relation as director; that he was not present at the Ocean Springs branch of the Scranton State Bank when the deposit was made, and, in fact, did not know of the deposit until the indictment was returned against him; that "he had no instrumentality in or connection with receiving the said deposit; that at the time the deposit was received he, defendant, was at or near Scranton, Mississippi, in the pursuit of his accustomed business; that he had no information that said deposit was going to be made or that it was likely to be made; that he did not direct it to be received and that he did not know that it had been received until the indictment was returned against him; that he did not see the depositor make the said deposit and had no opportunity to inform her of anything with respect to the Scranton State Bank or the Ocean Springs branch therof."

The state's demurrer to this plea questioned the sufficiency thereof because the plea admitted that appellee was a director. The court below overruled the demurrer and sustained the plea as being in abatement and quashed the indictment; but, at the request of the district attorney, held the appellee under bond in the sum of $5,000 to await the result of an appeal to the supreme court.

The statute under which appellee was indicted, Code 1906, § 1169, is as follows: "If the president, manager, cashier, teller, assistant, clerk, or other employe or agent of any bank or broker's office or establishment conducting the business of receiving on deposit the money or other valuable things of other persons shall remove or secrete or conceal the assets or effects of such es-

tablishment for the purpose of defrauding any of the creditors of the establishment, or shall receive any deposit knowing, or having good reason to believe, the establishment to be insolvent, without informing the depositor of such condition, on conviction, he shall be imprisoned in the penitentiary not longer than five years."

*George Butler,* assistant attorney-general, for appellant.

At the very threshhold we charge that the appellee's special plea in bar amounts to nothing more than the general issue, that is to say, an alibi; and the demurrer to the plea should, for that reason, have been sustained. 12 Cyc. 361; *Danforth v. State,* 75 Ga. 614; *Peters v. State,* 3 Green (Ia.) 74; *Fox v. State,* 89 Ind. 381; *Davis v. State,* 152 Ind. 145.

Furthermore, after the demurrer had been overruled the indictment should not have been quashed and the prisoner discharged, but an issue should have been made up and the matter submitted to a jury. *State v. Barret,* 54 Ind. 434.

The indictment charges that appellee was a person in authority and having knowledge of the affairs of the bank, and that he, together with the other officers of the bank, *knowingly* permitted the deposits to be made while the bank was insolvent. Hence, for this reason the indictment should not have been quashed, since an issue was made up by the averment of the indictment and the denials of the appellees' plea, and this issue, which was one of fact, was for the jury's determination.

*B. P. Harrison,* district attorney, on the same side.

In construing Code 1906, § 1169, upon which the indictment in question is based, we must look to the intent of the legislature in the matter. Its object, to quote CAMPBELL, J., in *Hughes v. Lake,* 63 Miss. 557, "was to protect the confiding public from the victimization apt to result from depositing in an insolvent establishment, and it seeks to give protection by denouncing a penalty against him who receives a deposit, knowing or having

good reason to believe that the establishment is insolvent." See also *State v. Bardwell,* 72 Miss. 538, 18 South. 377; *Baker v. State,* 54 Wis. 321; *Meadowcraft v. People,* 163 Ill. 56, 35 L. R. A. 176; *Cook v. Hart,* 146 U. S. 183, 36 L. Ed. 934.

Only by Code 1906, §§ 1426, 1427, could appellee properly raise objections to the legal sufficiency of the indictment, and, under the circumstances, the quashing of the indictment was error on the part of the court below. Hence, the judgment of the court below must be reversed, the indictment reinstated, the cause remanded and the appellee be held to await further action in due course in the court below.

*May & Sanders,* on the same side.

It will be noted that the appellee and his co-directors were jointly indicted as managing officers of the alleged insolvent bank and that as directors and managers they were conducting the business of receiving on deposit the money and other valuable things of other persons, in the Ocean Springs branch of the Scranton State Bank, at a time when appellee and his co-directors knew, or had good reason to know, that the bank was insolvent, and the deposit in question was received into the branch bank without information from appellee and his co-directors to the depositor to the effect that the bank was insolvent. The sufficiency of the indictment was not raised by demurrer, as would appear to be good practice under Code 1906, § 1426. Nor was motion made by appellee to quash the indictment, hence the action of the court below in quashing the indictment, practically of its own motion, was erroneous. Code 1906, § 1427.

*Wm. D. Bullard,* for appellee.

The indictment charges a crime which is a statutory offense, hence the statute in question must be looked to and strictly construed. Code 1906, § 1169, does not name a director of a bank among the list of officers mentioned. Mitchell, as director, was

not actually engaged at the bank, was not required by law to receive moneys for the bank, hence could not be held liable criminally when some officer of the bank received money on deposit in and for the bank. *State v. Walker,* 88 Miss. 592, 41 South. 8; *State v. Starling,* 90 Miss. 255, 43 South. 952.

In *State v. Warner,* 60 Kan. 94, the doctrine that the defendant is not liable unless he receives the deposit is set forth in unmistakeable terms. The court there said: "Counsel for the state have failed to call our attention to any testimony in the record showing that Warner personally took either of the deposits or even had any knowledge that any one of them was in fact made. We have carefully examined the record, and fail to find therein that appellant had any direct connection with the receiving of the deposits or either of them." And the Kansas court reversed the judgment of the trial court.

*Fitts & Leigh,* on the same side.

The special plea, which was held by the court below to be sufficient, traverses every possible state of facts which could have possibly brought the appellee, Mitchell, into a position of guilt under Code 1906, § 1169. The plea places Mitchell at Scranton at the very time that Mrs. Phelps presents herself to the teller of the branch bank at Ocean Springs; it clothes him with ignorance with respect to any intention on her part to make the deposit; and it puts him in a place and in an attitude where not only did not receive the deposit, but where he absolutely did not know that it was going to be made; and where he had no opportunity to speak up and say to her that the bank was insolvent or in a failing condition, and then allow her to decide whether or not she would make the deposit notwithstanding his statement as to the condition of the bank. And *non constat* she might have gone forward and made the deposit after he had spoken the words necessary to excuse him from all guilt or blame under the terms of the statute.

Nearly every state in the union has some statutory provision

similar to, or resembling, the one under consideration; but each statute is to be construed separately and apart from every other, and measured by its own terms.  The essential elements to constatute guilt under our statute are; (a) the bank must be insolvent; (b) the person receiving the deposit must know or have good reason to believe it insolvent, and, (c) he must receive the deposit without notifying the depositor of the condition of the bank.

Diligent search on our part has failed to locate any adjudicated case holding, or intimating, that a person who does not receive the deposit, and who does not have the opportunity to impart the information required to be given, can be held guilty merely because as to him only one of the essential elements could be brought home, namely, the fact of the knowledge of insolvency. For it is not the fact of the knowledge of the insolvency that the law punishes, but the overt act of receiving the deposit with such knowledge, and the false pretense indulged in by reason of refraining from giving the depositor the benefit of that knowledge on his part.  The statutes of different states vary so widely that they are of but little use in determining the scope and limitations necessarily attaching to the interpretation of our statute under established canons of construction.  We have, however, found one thoroughly well reasoned opinion from a court of respectable standing, which is fully determinative of everything involved in this appeal, namely, *State v. Warner,* 60 Kan. 94, referred to in the brief of our associate counsel.  The Kansas statute is more stringent than that of Mississippi; it expressly includes a director in its catalogue of persons whose conduct it seeks to regulate, being in the following language: "No bank shall accept or receive on deposit, with or without interest, any money, bank bills or notes, or United States treasury notes, gold, or silver certificates, or currency, or other notes, bills or drafts circulating as money or currency, when such bank is insolvent; and any officer, director, cashier, manager, member, party or managing party of any bank, who shall knowingly vio-

late the provisions of this section, or be accessory to or permit or connive at the receiving or accepting on deposit of any such deposit, shall be guilty of a felony." Careful scrutiny of this statutory provision awakens particular interest, in that the Kansas law makes it unlawful to accept any deposit into a bank when it is insolvent. It is in this respect the most extreme statute that we have been able to find. It is furthermore peculiar in that it does not, in so many words, provide that the person receiving the deposit can free himself from guilt by disclosing the condition of the bank, but goes further and enjoins upon such person the duty of not permitting the deposit to be made. The Kansas decision, above cited, refers with approval to the case of *State v. Wells,* 134 Mo. 238, 35 S. W. 615. These cases are authority for the action of our own circuit court court below. And to the same general effect are the following: *Utley v. Hill,* 155 Mo. 232, 78 Am. St. Rep. 569; *Warren v. Penoyer,* 91 Fed. 587; *Clews v. Bardon,* 36 Fed. 617; *Witters v. Sowles,* 31 Fed. 1; *Casidy v. Uhlman,* 54 N. Y. App. Div. 205; *Williams v. Van Norden Trust Co.,* 93 N. Y. Supp. 821; *Commonwealth v. Schall,* 12 Pa. Co. Ct. 209; *Briggs v. Spalding,* 141 U. S. 132; *Hicks v. Steel,* 4 L. R. A. (N. S.) 280; *Hart v. Evanson,* 3 L. R. A. (N. S.) 438.

MAYES, J., delivered the opinion of the court.

Sections 1426 and 1427, Code of 1906, provide the only ways of raising objections to the legal sufficiency of indictments. By section 1426, if the defect appears on the face of the indictment, the objection must be raised by demurrer. By section 1427, if the defect is *dehors* the face, the objection must be made by motion to quash. Since the indictment was not challenged in either of the modes required by the statutes above referred to, the quashing of the indictment was wholly unauthorized. The legal sufficiency of the indictment could not be called in question under the pleading filed by the defendant, as the plea was addressed to a wholly different question. The so-called plea in bar

was not such in any true sense, and the demurrer thereto should have been sustained, and the plea stricken out. The allegations of fact contained in the so-called plea in bar are, at most, mere allegations of fact which the defendant relies on to to prove his innocence of the crime charged; but if it is conceded that the facts alleged in the plea, if true, should acquit defendant, such facts must be proven, as would any other fact showing innocence, and would not invalidate the indictment as a matter of law. If it be conceded that, on the establishment of the facts alleged in the plea, the innocence of the party would follow as a matter of law, the court below, on overruling the demurrer filed thereto by the state, should not have discharged the prisoner and quashed the indictment for the double reason that the demurrer only admitted the facts for the purpose of testing the legal question raised by it, and the indictment itself stood unchallenged. If the defense sought to be established by the facts of the plea constitute a valid defense in law, all that is alleged in it is admissible under a general plea of not guilty, and the plea was therefore bad. In section 742, Bishop on Criminal Procedure, is clearly defined the function of a plea in bar, and the circumstances authorizing this plea to be interposed are pointed out.

Such plea as is here sought to be given the effect of a plea in bar is a novelty in criminal procedure, as far as we can discover and amounts to no plea. The court below found, as a matter of law, that the facts alleged in the plea constituted a defense to the charge. It further proceeds to declare, after so finding, that the demurrer filed to same admits the facts, and, the demurrer being overruled, that these unproven allegations of fact contained in the plea entitle the prisoner to a discharge; and the court then extends the effect of the plea still further, and gives it the effect of a demurrer or motion to quash, and direct that the indictment be quashed. In other words, on a plea of which the most that can be said is that it is in effect a plea of not guilty, the defendant is acquitted and discharged on the mere allegations in the pleadings, and the indictment held

legally insufficient. Such a result as this, if sanctioned, would introduce into the criminal law a new and dangerous practice, not approved of by any authority that counsel has cited us to or that we can find.

The judgment is reversed, the indictment reinstated, cause remanded, and prisoner held to await further action of the court.

*Reversed.*

